IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA SNYDER, | : | |
| Plaintiff, | : | Case No. 2:08-cv-153 |
| v. | : | Judge Holschuh |
| FEDERAL INSURANCE COMPANY, | : | Magistrate Judge King |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Patricia Snyder sues Defendant Federal Insurance Company ("Federal") under the Employment Retirement Income Security Act of 1974 ("ERISA"). As a beneficiary of an employee welfare benefit insurance policy issued by Federal, Plaintiff seeks an order under 29 U.S.C. § 1132(a)(1)(B) clarifying and enforcing her alleged right to an arbitration of her benefits claim under the policy. This matter is before the Court on Plaintiff's motion for judgment on the administrative record (Doc. # 18) and Federal's cross motion for summary judgment (Doc. # 21). For the following reasons, the Court **DENIES** Plaintiff's motion for judgment as a matter of law, and **GRANTS** Federal's motion for summary judgment.

**I.  Background**

As an employee of Battelle Memorial Institute ("Battelle"), Plaintiff's husband, Ronald Snyder, enrolled in a Group Accident Insurance Plan ("Plan") offered by Battelle and insured by Federal. (Pl.'s Mot. for J. on Admin. R. 2; see Estes Aff. Ex. A at SNY089-100.) The Plan provided Mr. Snyder with "accident insurance protection for loss of life, dismemberment, paralysis, and permanent total disability caused by an accident on or off the job, 24 hours a day,

every day, worldwide, whether . . . traveling or at home." (Estes Aff. Ex. A at SNY090.) Mr. Snyder named his wife, Plaintiff in this case, as the Plan's beneficiary in the case of his accidental death. (Pl.'s Mot. for J. on Admin. R. 2.) On October 30, 2005, Mr. Snyder was injured when the tractor he was driving rolled over onto him. (Pl.'s Mot. for J. on Admin. R. 2.) A month later, Mr. Snyder died. (Pl.'s Mot. for J. on Admin. R. 2.)

On April 18, 2006, Plaintiff applied for benefits under the Plan. (Pl.'s Mot. for J. on Admin. R. 2; Estes Aff. Ex. A at SNY002.) On July 31, 2006, Federal denied Plaintiff's request for benefits, determining that Mr. Snyder's death was not caused by an accident, but rather was the result of natural causes. (Estes Aff. Ex. A at SNY027-29.) Defendant's denial letter advised Plaintiff of her right to appeal the decision under the plan.[1] (Estes Aff. Ex. A at SNY028.) On

---

[1] The Plan provides the following appeal procedure for adverse benefit decisions:

Claim Appeal Procedures. If your claim is wholly of partially denied, then you or your duly authorized legal representative shall have the following rights:

    (1) to obtain, subject to the following paragraph, a full and fair review by the Claims Administrator or its delegate;

    (2) to review pertinent documents; and

    (3) to submit issues and comments in writing,

    (4) for the review to take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered in the initial benefit determination.

To obtain review, you or your duly authorized legal representative must mail or deliver a written request for such a review to the Claims Administrator. Your request for review must be mailed or delivered within 60 days after your receipt of written notice of the denial of the claim (180 days for the appeal of claims involving disability). Your appeal of any claim involving disability will be decided without giving any deference to the initial adverse benefit determination, and shall be

September 28, 2006, Plaintiff appealed Federal's decision to deny benefits under the Plan. (Estes Aff. Ex. A at SNY126.) In her appeal letter, Plaintiff advised Federal that she was "in the process of obtaining additional medical evidence" that would be submitted to Federal when it was available. (Estes Aff. Ex. A at SNY126.)

On November 8, 2006, Federal denied Plaintiff's appeal. (Estes Aff. Ex. A at SNY129-30.) The independent Claim Review Committee agreed with Federal's initial conclusion that Mr. Snyder died not as a result of accidental bodily injury, but rather from atherosclerotic cardiovascular disease. (Estes Aff. Ex. A at SNY130.) The denial letter advised Plaintiff of her right to sue under ERISA § 502(a) if she was unsatisfied with the decision. (Estes Aff. Ex. A at SNY130.) According to Plaintiff, Federal denied her appeal without waiting for her additional medical evidence. (Pl.'s Mot. for J. on Admin. R. 3.)

Almost a year later, on October 13, 2007, Plaintiff demanded arbitration of her claim under Section VII of the Plan. (Estes Aff. Ex. A at SNY124.) Section VII of the Plan provides that:

> In the event of a dispute under this policy, either we, the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, may make a written demand for arbitration. In that case, we and the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, will each select an arbitrator. The two arbitrators will select a third. If they cannot agree within fifteen (15) days, either we or the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, may request that the choice of arbitrator be submitted to the American

---

conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.

(Estes Aff. Ex. A at SNY097-98.)

Arbitration Association. The arbitration will be held in the state of the Insured Person's principal residence.

(Estes Aff. Ex. A at SNY125.)

On November 15, 2007, Federal denied Plaintiff's arbitration demand.[2] (Estes Aff. Ex. A at SNY157.) Federal's denial letter provided, in part:

> Please be advised that your request for arbitration is not timely and cannot be considered. This claim was denied on final appeal by letter to you of November 8, 2006. That letter specifically indicated that administrative exhaustion was complete and any further review would need to be conducted pursuant to 502(a) of ERISA. Thus, there is currently no dispute subject to arbitration . . . Moreover, any arbitration conducted beyond the final level of administrative appeal outlined in the Plan, as you have requested here, would be improper and in conflict with the Department of Labor Regulations . . . Also, please be advised that ERISA case law is clear that no attorneys' fees can be awarded in prejudicial administrative proceedings. Lastly, even assuming, *arguendo*, that there even *could* be an arbitration, Ms. Snyder would be responsible for the fees for her choice of arbitrator and ½ of the fees of any third arbitrator . . . .

(Def.'s Mot. for Summary J. Ex. A (emphasis in original).)

On February 19, 2008, Plaintiff filed this suit under 29 U.S.C. § 1132(a)(1)(B), seeking an order to clarify and enforce her alleged right to an arbitration of her Plan benefits claim. Plaintiff filed a motion for judgment as a matter of law on her claim (Doc. # 18), and Federal responded with a cross summary judgment motion (Doc. # 21) opposing Plaintiff's claim that Federal can be compelled to arbitrate her benefits claim. Those cross motions for judgment as a matter of law are properly before this Court.

---

[2] There seems to be some dispute over when exactly Federal denied Plaintiff's arbitration demand. Federal's denial letter in the administrative record is dated July 10, 2008. (Estes Aff. Ex. A at SNY157.) But according to Federal, the true denial letter was time stamped and sent on November 15, 2007. For the purposes of these motions, however, the exact date that Federal denied Plaintiff's arbitration demand is unimportant.

4

**II.	Standard of Review**

As Federal points out, because Plaintiff in this case seeks to enforce her rights, as opposed to recover benefits under the terms of the Plan, the Court "will apply the ordinary summary judgment standard as opposed to the procedure set forth by the Sixth Circuit in Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir. 1998)."[3] Marah v. Boord, 2005 WL 1523713, *2 n.3 (S.D. Ohio June 28, 2005) (citing Beeler v. Western Southern Life Ins. Co., 247 F. Supp.2d 913, 921 n.5 (S.D. Ohio 2002)). Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c). Summary judgment will be granted "only where the moving party is

---

[3] Under Wilkins, when a beneficiary sues to recover benefits under an ERISA governed plan, "the district court must limit its review to the administrative record, conducting that review pursuant to an arbitrary and capricious standard if there is clear indication on the face of the plan that discretionary authority to determine eligibility for benefits was given to the administrator." Beeler, 247 F. Supp.2d at 921 n.5. In this case, Federal recognizes that the Wilkins procedure is inapplicable. Nevertheless, Federal argues that the arbitrary and capricious standard should apply to its interpretation of the Plan's arbitration provision for a different reason—because the Plan gives Federal discretionary authority to *construe terms of the plan*. (Def.'s Mot. for Summary J. 10-11 (emphasis in original)); see Wendy's Int'l, Inc. v. Karsko, 94 F.3d 1010, 1012 (6th Cir. 1996); Morrison v. Marsh & McLennan Cos., Inc., 439 F.3d 295, 300 (6th Cir. 2006). As will be explained below, however, this case turns not on an interpretation of the Plan's unambiguous arbitration provision, but on the legal question of to what extent that provision runs afoul of the ERISA regulations. Therefore, regardless of whether deference should be paid to Federal's construction of the terms of the Plan, the Court will review *de novo* the legal question of whether the arbitration provision is voided by the regulations.

entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right to trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)); see also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984); see also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

FED. R. CIV. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material

7

facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### III. Discussion

In her motion for judgment as a matter of law, Plaintiff argues that the plain language of the Plan's arbitration provision requires Federal to arbitrate her benefits claim upon Plaintiff's demand. (Pl.'s Mot. for J. on Admin. R. 6-7.) Federal responds, in its opposition brief to Plaintiff's motion and in its motion for summary judgment, that Plaintiff's interpretation of the arbitration provision as mandating arbitration upon demand is prohibited by ERISA and its Department of Labor regulations. (Def.'s Resp. to Pl.'s Mot. for J. on Admin. R. 4-5; Def.'s Mot. for Summary J. 16-19.) According to Federal, to comply with the ERISA regulations, the arbitration provision in the Plan must be interpreted to allow only for voluntary binding arbitration of Plan disputes, which either party to the Plan can refuse. (Def.'s Mot. for Summary J. 16-19.) Federal argues, therefore, that it is free to refuse Plaintiff's arbitration demand, and that Plaintiff's only avenue of challenging Federal's final denial of her benefits claim is through an ERISA lawsuit in federal court.

In response, Plaintiff agrees with Federal that the ERISA regulations require the Court to interpret the arbitration provision as voluntary for claimants under the Plan. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for J. on Admin. R. 1.) But according to Plaintiff, the provision, to the extent it requires Federal to arbitrate a Plan dispute upon a claimant's demand, complies with the ERISA regulations. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for J. on Admin. R. 4-8.) Plaintiff

8

argues that the ERISA regulations cited by Federal were designed to protect claimants from mandatory binding arbitration, not insurance companies. According to Plaintiff, the regulations responded to the insurance companies' practice of using mandatory binding arbitration provisions in insurance policies to deprive claimants of their ERISA right to appeal adverse benefit decisions to federal court. The regulations were not designed, Plaintiff argues, to preclude mandatory binding arbitration of benefits claims when the claimant, rather than the insurance company, demands arbitration. Therefore, while the Plan's arbitration provision must be interpreted as voluntary with respect to Plaintiff in the event Federal demands arbitration, Plaintiff argues that the provision should be interpreted as mandatory with respect to Federal in the event a claimant demands arbitration. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for J. on Admin. R. 8.) The Court agrees with Federal.

A.  **Relevant Law**

Plaintiff sues under ERISA to enforce her alleged right to an arbitration of her benefits claim under the Plan.[4] See 29 U.S.C. § 1132(a). ERISA governs any "employee welfare benefit plan" that is established or maintained by "any employer engaged in commerce or in any industry or activity affecting commerce."[5] 29 U.S.C. § 1003(a)(1). ERISA requires that

---

[4] Section 1132(a)(1)(B) of ERISA provides that "a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[5] ERISA defines an "employee welfare benefit plan" as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance

9

employee benefit plans "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). The statute charges the Secretary of Labor with defining what exactly constitutes a full and fair review. Id. at §§ 1133, 1135. Under this authority, the Secretary of Labor has promulgated a regulation prescribing the procedures that a plan provider must follow, after an adverse benefit decision, to provide a full and fair review of the decision.[6] See Claims Procedure, 29 C.F.R. § 2560.503-1 (2000) (the "Regulation"). The current version of the Regulation was issued on November 21, 2000, became effective on January 20, 2001, and applies to all claims filed on or after January 1, 2002. Id. With respect to the arbitration of adverse benefit decisions, the Regulation provides, in pertinent part:

> (c) The claims procedures of a group health plan will be deemed to be reasonable only if, in addition to complying with the requirements of paragraph (b) of this section–
>
> (4) The claims procedures do not contain any provision for the mandatory arbitration of adverse benefit determinations, except to the extent that the plan or procedures provide that:

---

or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

[6] "Regulations published in the Code of Federal Regulations 'have the force and effect of law, and all persons affected thereby are charged with legal notice of their provisions.'" Moody v. United States, 774 F.2d 150, 156 (6th Cir. 1985) (quoting Adamsville Lumbar Co., Inc. v. Rainey, 348 F. Supp. 373, 376 (W.D. Tenn. 1972)).

10

> (i) The arbitration is conducted as one of the two appeals described in paragraph (c)(2) of this section and in accordance with the requirements applicable to such appeals; and
>
> (ii) The claimant is not precluded from challenging the decision under section 502(a) of the Act or other applicable law.

29 C.F.R. § 2560.503-1(c)(4). This section of the Regulation applies to both group health plans and plans providing disability benefits. Id. at §§ 2560.503-1(c), (d).

### B. The Plan's Arbitration Provision Violates the Regulation

In this case, the parties agree that ERISA governs the Plan. The Plan, in that it provided Mr. Snyder accident insurance protection for permanent total disability or loss of life, falls within ERISA's definition of an "employee welfare benefit plan," and was established by Mr. Snyder's employer. See 29 U.S.C. §§ 1002(1), 1003(a). And the parties agree that the Regulation, and, more specifically, § 2560.503-1(c)(4) of the Regulation regarding the arbitration of adverse benefit decisions, applies to the Plan and its arbitration provision. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for J. on Admin. R. 4.) Finally, the parties agree that the arbitration provision in the Plan runs afoul of the Regulation. The parties disagree, however, on the extent to which the provision violates the Regulation. Federal argues that the entire arbitration provision in the Plan is voided by the Regulation because the provision requires arbitration of any plan dispute upon the demand of either a claimant or Federal. (Def.'s Mot. for Summary J. 18.) Plaintiff agrees that the arbitration provision, to the extent it requires a claimant to arbitrate a Plan dispute upon Federal's demand, violates the Regulation. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for J. on Admin. R. 4.) Plaintiff argues, however, relying in large part on the Regulation's administrative history, that the arbitration provision, to the extent it requires Federal to arbitrate a Plan dispute upon a claimant's demand, complies with the

Regulation. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for J. on Admin. R. 4-8.) Federal has the better of this argument.

The plain language of the Regulation prohibits "*any* provision for the mandatory arbitration of adverse benefit determinations" unless the plan provides that the arbitration is one of the two permissible levels of appeal and that the claimant is free to challenge the arbitrator's decision in federal court under § 502(a) of ERISA. 29 C.F.R. § 2560.503-1(c)(4) (emphasis added). In this case, the arbitration provision in the Plan permits, in violation of the Regulation, mandatory arbitration of adverse benefits decisions. See id. The arbitration provision provides that:

> in the event of a dispute under this policy, either we, the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, may make a written demand for arbitration. In that case, we and the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, will each select an arbitrator. . . .

(Estes Aff. Ex. A at SNY125.) Under the plain language of this provision, if either a claimant or Federal demands arbitration of an adverse benefit decision, the dispute must be arbitrated. The provision creates no right to decline an arbitration demand.

Furthermore, the Plan's arbitration provision does not fall within the Regulation's narrow exception to the ban on mandatory arbitration. See 29 C.F.R. § 2560.503-1(c)(4)(i)-(ii). The arbitration provision is not included as a level of appeal in the Plan's claim procedure, nor does the provision provide that the arbitrator's decision can be challenged in federal court under § 502(a) of ERISA. See id. Therefore, because the Plan's arbitration provision, which is not included as an appealable step in the Plan's claim procedure, mandates arbitration on one party to the Plan whenever the other party demands it, the provision violates the Regulation. See 29 C.F.R. § 2560.503-1(c)(4).

By arguing that the Regulation prohibits arbitration provisions that force a claimant to arbitrate a plan dispute, but permits provisions that force the insurer to arbitrate plan disputes, Plaintiff seeks to read a distinction into or create an exception to the Regulation that simply is not there. Nowhere in the Regulation does it say that mandatory arbitration is permitted with respect to the insurer but is prohibited with respect to the claimant. See id. In fact, the Regulation unambiguously prohibits, with one limited exception, "*any* provision for the mandatory arbitration of adverse benefit determinations." Id.; see In re Carter, 553 F.3d 979, 985-86 (6th Cir. 2009) (to discern the meaning of a statute, "the court begins its interpretation by looking first to the plain language of the statute . . . 'If the language of the statute is clear, then the inquiry is complete, and the court should look no further.'").

Plaintiff may be right that the Secretary of Labor's intent behind the Regulation, gleaned from the Regulation's administrative history, was to protect claimants, not insurance companies, from mandatory binding arbitration that deprives claimants of their ERISA right to appeal adverse benefit decisions in federal court.[7] Perhaps the Secretary of Labor never even envisioned a situation in which the claimant, not the insurance company, would be the party seeking to compel arbitration. But given that the plain language of the Regulation is unambiguous, the Court need not consider the administrative history behind the Regulation. See In re Carter, 553 F.3d at 986 ("In discerning legislative meaning, the court considers other persuasive authority [including legislative history] only if the statute is 'inescapably

---

[7] Plaintiff relies on the Supplementary Information to the proposed 1998 and 2000 versions of the Regulation to support her argument that the Regulation was designed only to prohibit mandatory arbitration with respect to claimants. See ERISA Claims Procedure, 63 Fed. Reg. 48390, 48397 (Sept. 9, 1998); ERISA Claims Procedure, 65 Fed. Reg. 70246, 70253-54 (Nov. 21, 2000).

13

ambiguous.'"). In no uncertain terms, without distinguishing between provisions that compel the claimant to arbitrate and those that compel the insurer to arbitrate, the Regulation prohibits *any* provision in the Plan for the mandatory arbitration of adverse benefit determinations. See 29 C.F.R. § 2560.503-1(c)(4). Therefore, the Court finds that the arbitration provision in the Plan violates the Regulation.[8]

### C. The Arbitration Provision in the Plan is Voluntary for Both Parties

This Court cannot and will not enforce an illegal contract term. Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77 (1982) ("The authorities from the earliest times to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract."). Given that the Plan's arbitration provision is illegal under the Regulation and unenforceable, the question remains what effect that illegality has on the contract between Plaintiff and Federal. Federal argues that the Court should interpret the provision to bring it in line with the Regulation; the provision permits voluntary arbitration that can be demanded and refused by either the claimant or Federal. The Court agrees.

Section VII of the Plan contains a provision titled "Conformance with Statutes." (Estes Aff. Ex. A at SNY220.) That provision provides that "any terms of this policy which are in

---

[8] Plaintiff argues that the Federal Arbitration Act ("FAA") requires the Court to liberally construe the Plan's arbitration provision. While the Court recognizes the "liberal federal policy favoring arbitration agreements," even the most liberal policy cannot outweigh the unambiguous law prohibiting mandatory arbitration provisions in ERISA-governed insurance plans. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 483 (1989) (a statute overrides the mandate of the FAA when arbitration inherently conflicts with the underlying purposes of the statute). The Secretary of Labor's explicit prohibition of mandatory arbitration provisions in ERISA-governed plans supersedes the FAA's liberal policy favoring arbitration agreements. See Rodriguez de Quijas, 490 U.S. at 483.

14

conflict with the applicable statutes, laws or regulations of the state or territory in which this policy is issued are amended to conform to such statutes, laws or regulations." (Estes Aff. Ex. A at SNY220.) As explained above, the arbitration provision in the Plan conflicts with the Regulation. Therefore, the Plan requires the Court to amend the provision to conform with the Regulation. The easiest way to amend the arbitration provision to comply with the Regulation is to interpret the provision to permit only voluntary arbitration of Plan disputes. Absent the requirement that a Plan dispute be arbitrated upon either party's demand, the arbitration provision conforms with the Regulation. Therefore, the Court agrees with Federal that the arbitration provision should be interpreted to permit only voluntary arbitration of Plan disputes, which can be demanded and refused by either the claimant or Federal.[9]

Given that the arbitration provision in the Plan violates the Regulation as written, and must be interpreted to permit only voluntary arbitration to comply with the Regulation, Plaintiff cannot compel Federal to arbitrate her benefits claim. See 29 C.F.R. § 2560.503-1(c)(4); (Estes Aff. Ex. A at SNY220.) Therefore, the Court **DENIES** Plaintiff's motion for judgment as a matter of law, and **GRANTS** Federal's motion for summary judgment.

IV.     **Conclusion**

No genuine issues of material fact exist in this case, and, for the reasons above, Federal is entitled to judgment as a matter of law. The Court therefore **DENIES** Plaintiff's motion for

---

[9] Alternatively, the Court could sever the illegal arbitration provision completely from the Plan. See Chattanooga Mailers' Union, Local No. 92 v. Chattanooga News-Free Press Co., 524 F.2d 1305, 1313 (6th Cir. 1975) (even when contracts do not contain a severability clause, illegal contract provisions should not render the entire contract void unless the "forbidden provision is so basic to the whole scheme of a contract and so interwoven with all its terms that it must stand or fall as an entirety."), *overruled on other grounds*, Bachashihua v. United States Postal Service, 859 F.2d 402 (6th Cir. 1988).

15

judgment as a matter of law (Doc. # 18), and **GRANTS** Federal's motion for summary judgment (Doc. # 21).  Plaintiff's action to compel Federal to arbitrate her adverse benefit decision is **DISMISSED**.  Plaintiff's avenue for redress of Federal's decision denying her benefits claim is a lawsuit in federal court as permitted under ERISA.  See 29 U.S.C. § 1132(a)(1)(B).

**IT IS SO ORDERED**.


Date: March 13, 2009　　　　　　　　　　　　　　**/s/ John D. Holschuh**
　　　　　　　　　　　　　　　　　　　　　　　　John D. Holschuh, Judge
　　　　　　　　　　　　　　　　　　　　　　　　United States District Court